UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RICHARD N. HILL,

        Petitioner,

        v.

STEPHEN D'LLIO, et al.,

        Respondents.

Civil No. 14-5990 (NLH)

**OPINION**

**APPEARANCES:**

    RICHARD N. HILL, #499685
    New Jersey State Prison
    P.O. Box 861
    Trenton, NJ 08625
        *Pro Se Petitioner*

    JASON MAGID, Assistant Prosecutor
    CAMDEN COUNTY PROSECUTOR
    25 North Fifth Street
    Camden, NJ 08102
        *Attorneys for Respondents*

**HILLMAN, District Judge:**

Richard N. Hill filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 challenging a judgment of conviction filed in the Superior Court of New Jersey, Camden County, on September 16, 2004. The challenged judgment imposed an aggregate 35-year term of imprisonment, with an 85% period of parole ineligibility, after a jury found petitioner guilty of first-degree kidnapping, first-degree aggravated sexual assault, third-degree terroristic threats, third-degree possession of a

weapon for an unlawful purpose, and second-degree conspiracy. The State filed an Answer and the record, and Hill filed a Reply.  After carefully reviewing the arguments of the parties and the state court record, this Court will dismiss the Petition with prejudice and deny a certificate of appealability.

## I.   **BACKGROUND**

A.   The Crimes

As set forth above Richard Hill was sentenced after a jury found him guilty of first-degree kidnapping (counts one and two), first-degree aggravated sexual assault (counts three, six, nine), simple assault (count 12), third-degree terroristic threats (count 15), third-degree possession of a weapon for an unlawful purpose (count 16), and second-degree conspiracy (count 18).  Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), state court factual findings are presumed correct unless rebutted by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).  As Hill has not rebutted the factual findings of the Superior Court of New Jersey, the Court will rely on those findings.  *See State v. Hill,* 2006 WL 1914647 (N.J. Super. Ct., App. Div., July 13, 2006).

The Appellate Division found that on the evening of August 17, 2001, 34-year old J.P. stopped at the Westmont Inn as she was walking home from her sister's house in Haddonfield, New Jersey.

2

She spent the evening at the tavern with Hill and his friend, Ryan Shavitz.  J.P. had known Hill and his wife for about 10 years and she had met Shavitz on one prior occasion when he invited her for a ride on his motorcycle.  The three left the Westmont Inn shortly before 2:00 a.m., and Shavitz drove them to Hill's house, where they drank beer and smoked marijuana.  J.P. left on foot when Hill insisted that she sit on his lap.

Hill, who was Shavitz's sponsor in the Pagan Motorcycle Club, ordered Shavitz to bring J.P. back.  Shavitz drove until he found J.P. walking down the road.  Shavitz, who testified for the State, testified that he coaxed her into his car, but J.P. testified that he grabbed her and put her into the car.  Shavitz drove J.P. back to Hill's house where Hill and Shavitz raped her multiple times and subjected her to hours of physical and sexual abuse, and terroristic threats.  Eventually, when Hill fell asleep at 4:50 a.m., J.P. escaped through an upstairs window, ran to a payphone, and called the police.  The police arrested Hill and Shavitz outside of Hill's house.

B.   The State Court Proceedings

A grand jury sitting in the Superior Court of New Jersey, Law Division, Camden County, issued a 20-count indictment charging Hill and Shavitz with kidnapping, nine counts of aggravated sexual assault, and other crimes.  The government

3

offered, and Hill rejected, a plea bargain requiring him to plead guilty to one count of aggravated sexual assault and one count of kidnapping in exchange for an 18-year term of imprisonment.

The witnesses at trial included J.P. and Shavitz for the State, and Hill for the defense.  The jury did not convict Hill of all counts in the indictment, but found him guilty of first-degree kidnapping, three counts of first-degree aggravated sexual assault, one count of simple assault, one count of third-degree terroristic threats, one count of third-degree possession of a weapon for an unlawful purpose, and one count of second-degree conspiracy to commit kidnapping and aggravated sexual assault.  On September 16, 2004, the trial judge sentenced him to an aggregate 35-year term of imprisonment, with an 85% period of parole ineligibility.  Hill appealed, and on July 13, 2006, the Appellate Division of the Superior Court of New Jersey affirmed.  *See State v. Hill,* 2006 WL 1914647 (N.J. Super. Ct., App. Div., July 13, 2006).  On June 1, 2007, the New Jersey Supreme Court denied certification.  *See State v. Hill,* 192 N.J. 70 (2007) (table).  On January 7, 2008, the Supreme Court denied Hill's petition for certiorari.  *See Hill v. New Jersey,* 552 U.S. 1113 (2008).

4

Hill signed a pro se petition for post-conviction relief on August 25, 2008.  (ECF No. 14-15 at 18.)  The Law Division filed the petition on September 8, 2008.  (ECF Nos. 1 at 4, 14-21 at 12.) The trial court denied post-conviction relief without conducting an evidentiary hearing by order filed on August 30, 2010.  Hill appealed, and on July 16, 2013, the Appellate Division affirmed. *See State v. Hill,* 2013 WL 3581913 (N.J. Super. Ct., App. Div., July 16, 2013).  The New Jersey Supreme Court denied certification on February 4, 2014.  *See State v. Hill,* 217 N.J. 286 (2014) (table).

C.    Procedural History of § 2254 Petition

Hill signed his § 2254 Petition, and presumably handed it to prison officials for mailing to the Clerk, on September 22, 2014.  The Petition raises the following grounds:

Ground One:
    A. COURT'S FAILURE TO DISMISS JUROR FOR CAUSE DEPRIVED PETITIONER OF HIS RIGHTS TO A FAIR AND IMPARTIAL JURY [UNDER] THE UNITED STATES CONSTITUTION.

    B. TRIAL COURT'S FAILURE TO QUESTION OTHER JURORS IN WAKE OF COURT OFFICER'S TESTIMONY THAT OTHER JURORS STATED THEY WERE ALSO CONCERNED ABOUT THEIR SAFETY DEPRIVED PETITIONER OF HIS RIGHTS TO A FAIR AND IMPARTIAL JURY UNDER THE UNITED STATES CONSTITUTION.

Supporting Facts:  Prior to trial prospective jurors were told about the connection of defendant and others to the Pagan Motorcycle Club. None of the jurors expressed any reservation about serving as unbiased and impartial jurors or abiding by the trial court's instructions.  During the course of trial a juror made

5

highly irregular statements to a court officer, who
then sent a note to the judge expressing that juror's
fear and concern for his safety, and for the safety of
his family.  The court officer also unequivocally
stated that the juror also stated to her that other
jurors had stated they were also concerned about their
safety.  All of was the result of allegations made
[by] codefendant of alleged threats from petitioner
and/or other members of the motorcycle club.  The
statements of that juror and other jurors clearly
indicate that their beliefs and attitudes would
substantially interfere with their duties, and
professions of impartiality in that they had already
(pre-deliberation) considered the statements of
codefendant and deemed them credible.

Ground Two:  TRIAL COUNSEL'S FAILURE TO PROPERLY
ADVISE PETITIONER CONCERNING PLEA OFFER VIOLATED
PETITIONER'S RIGHT TO DUE PROCESS UNDER THE SIXTH AND
FOURTEENTH AMENDMENTS OF THE UNITED STATES
CONSTITUTION.

Supporting Facts:  Counsel failed to advise petitioner
of all the material information required to make an
informed decision to accept or reject the State's plea
offer.  More specifically, petitioner was Never
informed of the potential applicability of New
Jersey's No Early Release Act (NERA) to his
sentencing.  Nor was he informed of the parole
consequences of NERA.  Nor that he could receive
consecutive sentences if he went to trial.  Further,
preceding petitioner's first court appearance and
throughout the course of this case[,] Petitioner was
under Psychological and Psychiatric care, receiving
numerous medications, including psychoactive and
psychotropic medications.

(Petition, ECF No. 1 at 8-9.)

The State filed an Answer arguing that Hill is not entitled

to habeas relief on the merits, and Hill filed a Reply arguing

that he is.  (ECF Nos. 14, 17.)

## II.  STANDARD OF REVIEW FOR RELIEF UNDER § 2254

Section 2254 of title 28 of the United States Code sets limits on the power of a federal court to grant a habeas petition to a state prisoner.  *See Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).  Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Where a state court adjudicated petitioner's federal claim on the merits,[1] as in this case, a court "has no authority to issue the writ of habeas corpus unless the [state c]ourt's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States', or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court

_____

[1] "For the purposes of Section 2254(d), a claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that 1) finally resolves the claim, and 2) resolves th[at] claim on the basis of its substance, rather than on a procedural, or other, ground." *Shotts v. Wetzel,* 724 F.3d 364, 375 (3d Cir. 2013) (citation and internal quotation marks omitted).

proceeding.'" *Parker v. Matthews*, 132 S.Ct. 2148, 2151 (2012) (quoting 28 U.S.C. § 2254(d)). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015). The petitioner carries the burden of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits. *See Pinholster*, 131 S.Ct. at 1398.

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court. *See Yarborough v. Alvarado*, 541 U.S. 652, 660 (2004). "[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of t[he Supreme Court's] decisions," as of the time of the relevant state-court decision. *Woods*, 135 S.Ct. at 1376 (quoting *White v. Woodall,* 134 S.Ct. 1697, 1702 (2014), and *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1) if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are

materially indistinguishable from a decision of th[e Supreme]
Court and nevertheless arrives at a [different] result."
*Williams*, 529 U.S. at 405-06.  Under the "'unreasonable
application' clause of § 2254(d)(1), a federal habeas court may
grant the writ if the state court identifies the correct
governing legal principle from th[e Supreme] Court's decisions
but unreasonably applies that principle to the facts of the
prisoner's case."  *Id.*, 529 U.S. at 413.

    Where a petitioner seeks habeas relief pursuant to §
2254(d)(2) on the basis of an erroneous factual determination of
the state court, two provisions of the AEDPA necessarily apply.
First, the AEDPA provides that "a determination of a factual
issue made by a State court shall be presumed to be correct
[and] [t]he applicant shall have the burden of rebutting the
presumption of correctness by clear and convincing evidence."
29 U.S.C. § 2254(e)(1); *see Miller-El v. Dretke*, 545 U.S. 231,
240 (2005).  Second, the AEDPA precludes habeas relief unless
the adjudication of the claim "resulted in a decision that was
based on an unreasonable determination of the facts in light of
the evidence presented in the State court proceeding."  28
U.S.C. § 2254(d)(2).

### III.  DISCUSSION

A.  Claim Regarding Juror Bias

In Ground One, Hill asserts that the trial court violated his right to be tried by an impartial jury by refusing to dismiss juror number five after that juror expressed concern during the trial for his and his family's safety.  Hill also claims that the trial judge's failure to question the other jurors about whether they had safety concerns violated his constitutional rights.

The Sixth Amendment provides:  "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ."  U.S. Const. amend. VI.  The Court will examine the relevant Supreme Court precedent concerning juror impartiality, as required by § 2254(d)(1).

In *Irvin v. Dowd*, 366 U.S. 717 (1961), the Supreme Court reversed the Seventh Circuit's ruling affirming the dismissal of a § 2254 petition where the petitioner claimed that the jury was not impartial because two-thirds of the venire persons eventually selected as jurors had "an opinion that petitioner was guilty and were familiar with the material facts and

10

circumstances involved, including the fact that other murders were attributed to him, some going so far as to say that it would take evidence to overcome their belief." *Id.* at 728.  In *Turner v. State of La.*, 379 U.S. 466, 471-73 (1965), the Court found that the defendant was denied a fair trial before an impartial jury where two prosecution witnesses were also sheriff's officers who were functioning as custodians of the jury hearing the case.

However, in *Mu'Min v. Virginia,* 500 U.S. 415 (1991), eight out of the twelve jurors answered on *voir dire* that they had read or heard something about the case but that they had not formed an opinion based on outside information.  The trial judge refused Mu'Min's request to ask them about the specific contents of the news reports to which they had been exposed and the Supreme Court held that this did not violate due process.[2]  In doing so, the Court stressed "the wide discretion granted to the

---

[2] The evidence showed that there were 47 newspaper articles relating to the murder for which Mu'Min was being tried and that one or more of the articles included information about his prior criminal record, the fact that he had been rejected for parole six times, accounts of his alleged prison infractions, details about the prior murder for which Mu'Min was serving his sentence at the time of this murder, and indications that Mu'Min had confessed to killing the victim of this murder.  *See Mu'Min,* 500 U.S. at 418.

trial court in conducting *voir dire* in the area of pretrial publicity and in other areas of inquiry that might tend to show juror bias." *Id.* at 427.  In *Skilling v. United States,* 561 U.S. 358 (2010), the Supreme Court held that actual prejudice did not infect Skilling's jury, despite substantial negative pretrial publicity concerning his bankruptcy and securities fraud trial.  "Prominence does not necessarily produce prejudice, and juror *impartiality,* we have reiterated, does not require *ignorance.*"  *Id.* at 381 (emphasis in original).  The Court emphasized that the negative news stories did not refer to a confession or other "evidence of the smoking-gun variety," *id.* at 383, and that the jury's acquittal of Skilling on nine counts indicated a fair-minded consideration of the issues.  *See also Smith v. Phillips*, 455 U.S. 209, 217 (1982) ("[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation.")

Finally, Supreme Court precedent establishes that, "where an adversary wishes to exclude a juror because of bias . . , it is the adversary seeking exclusion who must demonstrate, *through questioning*, that the potential juror lacks impartiality." *Morgan v. Illinois,* 504 U.S. 719, 733 (1992) (citation and internal quotation marks omitted) (emphasis in original).

12

In this case, there was no factual dispute that at the time of the incident Hill was a member of the Pagan Motorcycle Club, that Shavitz had applied to join the club, and that as a club prospect Shavitz was assigned to Hill.  Hill's attorney stated these facts in his opening statement. (ECF No. 14-31 at 21.)  In addition, Hill's attorney asked the trial judge to include a series of questions about the Pagan Motorcycle Club in the *voir dire* to weed out jurors who might have been prejudiced against Pagans.

The facts concerning the alleged juror bias relate to the testimony on the third day of trial by Shavitz.  The prosecutor asked him why he had not told the police during his statement that he had choked the victim into unconsciousness.  He responded:

> I wasn't questioned about that type of incident.  As I said before, what I was questioned on I gave answers to. But I wasn't willing to be 100 percent forthcoming and just spill my conscience out on the table at that point.  You have to understand, I was scared being in the police station.  I was also scared of repercussions once I would leave the police station.

(ECF No. 14-33 at 101-102.)

When the prosecutor asked "Repercussions from who[m]?" Shavitz answered "My co-defendant."  *Id.* at 102.  Shortly thereafter, the prosecutor asked Shavitz if he had told the

13

police that when he raped the victim he was acting under orders
and Shavitz answered affirmatively.  Shavitz answered negatively
when asked if anyone forced him to rape the victim and Shavitz
added that he "would have had to face consequences afterwards
but [he] wasn't bound, gagged, handcuffed."  *Id.* at 103.

The record shows that the day after Shavitz testified juror
number five – Rodriguez – spoke to a court aide.  The aide wrote
a note to the judge indicating that one of the jurors wanted the
aide to talk to the judge concerning his and his family's safety
regarding the fact that the defendant was a Pagan.  The trial
judge then questioned juror Rodriguez outside the presence of
the jury.  Rodriguez stated:

> Basically, my concern is about safety.  There have
> been a couple threats to the co-defendant he mentioned
> in testimony and the safety of my family, just
> basically, around this case from repercussions about,
> you know, from the defendant or any associates.

(ECF No. 14-34 at 55-56.)

Rodriguez further stated, when asked by the judge, that he
had not discussed the safety issue with other jurors.  He added
that his concern was logical since jurors had revealed their
names and where they resided during *voir dire*.  The trial judge
informed Rodriguez that his address had not been revealed to the
defendants.  When the judge asked whether Rodriguez thought he

14

could stay on the jury in light of his concern about safety, Rodriguez stated: "I'm committed to doing the right thing and I'm very unbiased." *Id.* at 57. At the request of defendant's attorney, the judge asked Rodriguez if he could follow the instructions concerning presumption of innocence, burden of proof and the instructions which the judge would provide prior to deliberations, and Rodriguez stated that he would "absolutely" be able to follow the instructions. *Id.* at 60.

Next, the judge questioned the court aide, who stated that juror number five told her that other jurors were also concerned about their safety. After the aide was questioned, defense counsel moved to excuse Rodriguez on the ground that he had formed an opinion regarding the credibility of Shavitz and he was not forthright about concerns being expressed by other jurors. The prosecutor – not the defense attorney - asked the judge to question the other jurors as to their concerns regarding safety and to inform them that their addresses had not been revealed to defendants. The trial judge brought Rodriguez back. Rodriguez confirmed that he had not discussed safety with other jurors and that he had no knowledge of other jurors' concerns.

15

After Rodriguez left, the trial judge stated that he was satisfied that they had "weeded the rest of the jury out." (ECF No. 14-34 at 71.)  The trial judge denied the defense motion to excuse Rodriguez:

> I'm not sure I see the cause here.  The man has simply said that there was a safety concern raised by the fact that this defendant – testimony is this defendant, according to Shavitz, is a member of the Pagans motorcycle club and we all know what the testimony of Shavitz is.  But I think he wanted assurance.  And he said very clearly this would not affect the outcome of his decision.  It would not impact on his decision, guilty or not guilty.  That he could be fair and impartial and he was committed to this case.  And he just came back and we asked him whether other jurors had raised this concern and he said not to his knowledge.  So I just don't know that it's appropriate to dismiss a juror merely because he had – he raised a concern and his concern was addressed.  We pointed out to him that addresses are not provided and no counsel in this courtroom shall do that, provide that to anyone out of this courtroom.  And I just don't see why he should be dismissed for cause at all.  I mean, it really would be speculation, as I see it, to say that he wouldn't be fair and impartial, really.

*Id.* at 71-72.

The Appellate Division outlined the above facts when it considered the impartial jury claims on direct appeal and rejected Hill's argument that the trial judge erred in failing to dismiss Rodriguez for cause, finding that

> there was no error by the trial judge in denying defendant's motion to excuse Rodriguez or declare a mistrial.  Judge Cook followed the procedure outlined

16

by our Supreme Court in *State v. R.D.,* 169 N.J. 551, 557-61 (2001).  Giving deference to the ability of the trial judge to assess the credibility of the juror, we perceive no abuse of discretion which would impact in denying defendant a fair trial.

*Id.*

This Court is required to presume the correctness of the Appellate Division's factual findings concerning the absence of bias on the part of Rodriguez and the absence of a factual basis to *voir dire* all jurors, as Hill has not rebutted them with clear and convincing evidence or shown that these factual determinations were unreasonable in light of the evidence presented.  *See* 28 U.S.C. § 2254(d)(2) and (e)(2).  The Court notes that there was no evidence of any extra-judicial influence on any juror and that the jury's acquittal of Hill on some charges indicates that the jury fairly considered the evidence in the case and that they had not formed an opinion of guilt prior to deliberations.  The Appellate Division did not unreasonably apply clearly established Supreme Court precedent concerning juror impartiality when it rejected Hill's claims. *See United States v. DiSalvo,* 34 F.3d 1204, 1225 (3d Cir. 1994)("[J]urors' expressions of fear or apprehension of a defendant do not, per se, establish juror bias"); *United States v. Thornton,* 1 F.3d 149, 155-56 (3d Cir. 1993) (holding that

17

District Court was not required to *voir dire* jurors after the deputy clerk advised the court that some jurors had expressed a general feeling of apprehensiveness about their safety during criminal drug trial); *United States v. Watchmaker*, 761 F.2d 1459, 1466 (11th Cir. 1985)(holding that, where during deliberations a juror expressed her fear, which she said was shared by other jurors, of retaliation by defendants, who were members of the Outlaw Motorcycle Club, or by other club members, the judge did not abuse his discretion in failing to *voir dire* jurors because "[d]iscussions among the jurors as to their fear of the defendants are not inappropriate, so long as such discussions do not lead them to form an opinion of the defendants' guilt or innocence of the offenses charged.")  Hill is not entitled to habeas relief on Ground One.

B.   Ineffective Assistance of Counsel in Plea Negotiations

In Ground Two, Hill asserts that counsel was constitutionally deficient during plea negotiations by failing to inform him that New Jersey's No Early Release Act ("NERA") applied to his sentence and parole eligibility, and failing to

inform him that he could receive consecutive sentences if he were convicted after a trial.[3]

The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors fell "below an objective standard of reasonableness[.]" *Hinton v. Alabama*, 134 S.Ct. 1081, 1083 (2014) (per curiam). To establish prejudice, the defendant must show that "there is a

---

[3] Hill further states that he "was under Psychological and Psychiatric care, receiving numerous medications, including psychoactive and psychotropic medications," but he does not assert the way in which counsel was deficient in this regard. (ECF No. 1 at 9.)

reasonable probability that the result of the trial would have been different absent the deficient act or omission." *Id.*, 134 S.Ct. at 1083.

To establish ineffective assistance of counsel in the plea negotiation context where defendant rejected a plea, a defendant must show:  (1) counsel's advice during the plea process was not "'within the range of competence demanded of attorneys in criminal cases,'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)), and (2) "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler v. Cooper*, 132 S.Ct. 1376, 1385 (2012).

Hill raised his ineffective assistance of counsel claims on post-conviction review.  The Appellate Division rejected the claims because it found that Hill had, in fact, been informed

20

about the effect of the NERA and the potential for consecutive sentences:

> The pre-trial memorandum defendant signed confirms that the State offered him a plea agreement of an eighteen-year term of imprisonment subject to NERA on counts one and six, and that defendant acknowledged that NERA applied and, if convicted, he faced a maximum sentence of one hundred and twenty years and a maximum parole ineligibility period of sixty years. Thus, we agree with the PCR judge that defendant was well-aware of his potential sentence and NERA exposure if convicted.

*Hill*, 2013 WL 3581913 at *3.

The record confirms that on May 21, 2003, Hill signed and initialed each page of a Pretrial Memorandum.  (ECF No. 14-3.) The Pretrial Memorandum sets forth each count of the indictment and the maximum sentencing exposure for each count, states that NERA's 85% period of parole ineligibility applies, specifies the maximum sentencing exposure, if convicted after trial on all counts, of 120 years, with a maximum parole ineligibility period of 60 years, and describes the plea offer, *i.e.,* pleading guilty to kidnapping and aggravated sexual assault in exchange for dismissal of the remaining charges and a sentence of 18 years with an 85% period of parole ineligibility.

Again § 2254(e)(1) requires this Court to presume the correctness of the Appellate Division's findings that Hill knew when he rejected the plea offer that the NERA applied to his

21

sentence and affected his parole eligibility, and that he could receive consecutive sentences if he were convicted after a trial.  Hill has not rebutted this presumption of correctness nor shown that the Appellate Division unreasonably determined these facts in light of the evidence presented.  *See* 28 U.S.C. § 2254(d)(2).  Nor has he shown that the Appellate Division unreasonably applied *Strickland* and its progeny in its rejection of Hill's ineffective assistance of counsel claim.  Accordingly, he is not entitled to habeas relief on Ground Two.  *See* 28 U.S.C. § 2254(d)(1).

## IV.  CERTIFICATE OF APPEALABILITY

The AEDPA provides that an appeal may not be taken to the court of appeals from a final order in a § 2254 proceeding unless a judge issues a certificate of appealability on the ground that "the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). This Court denies a certificate of appealability because jurists of reason would not find it debatable that dismissal of the Petition is correct.

## V.   CONCLUSION

This Court will dismiss the Petition with prejudice and
deny a certificate of appealability.   An Order consistent with
this Opinion will be filed.


                              s/Noel L. Hillman
                              **NOEL L. HILLMAN, U.S.D.J.**

Dated:  May 20, 2016

At Camden, New Jersey